By the Court.*Potter, J.
The questions to be decided here do not call for an adjudication upon the merits, or upon the rule of damages, if the plaintiffs’ pleading shall be sustained; but the questions are strictly such as shall test the pleadings we have specified in the statement of the case; and
First. As to the sixth answer of the defendants.
In testing this as a pleading, we may take into consideration that it is made the duty of the defendants by statute (Bess. Laws of 1855, ch. 559) to transmit the plaintiffs’ message, which they received from “ The United States Branch Telegraph Company,” and which was given to the latter company by the plaintiffs at Ogdensburgh, on November 16, 1864. Whether the injury complained of arose from that implied contract, which the law imposes upon every one who undertakes for another, or by virtue of the special contract which the defendants set up in the sixth answer, the defendants were in duty bound to send it, and in transmitting it were bound to exercise a degree of care and skill, and a reasonable dispatch in performing the duty or obligation they so undertook, and for which, by legal implication, they received from the plaintiffs all the consideration they demanded for the performance of such undertaking. This is to be implied from the undisputed facts that about the sum-of two dollars was paid by the plaintiffs at the time, in advance, to secure the undertaking, and that the defendants actually undertook its performance for some consideration, as is also to be implied- from the fact of receiving such message from their connecting line, the United States Branch Telegraph Company, and from the *421 duty required by the statute. If, however, the undertaking of the defendants is put upon their alleged contract, set up in this sixth answer, it is found that it contains a pledge or promise, on their part, of good faith and due diligence in the performance of their duty. This answer sets up a defense that the agreement made by; the plaintiffs with the United States Branch Company was the contract between the parties. Then, so far as this answer is concerned, this agreement is the contract by which the defendants entered upon its performance. By this agreement the defendants exempt themselves from liability on account of delays, errors or remissness . on the part of connecting lines.
No act, however, or omission, or delay, error or remissness of any connecting line, is complained of by the plaintiffs. The complaint is against the defendants’ own line. This part of the contract, therefore, and the exemption seated, does not apply to their defense. The remaining part of this alleged contract is the ground of their defense, to wit: “ that they only guarantee entire correctness when messages are repeated back from the place to which they are sent; for which repetition a small charge will be made.”
Assuming that the duty imposed by statute demanded of the defendants that they transmit this message, and that they have received their .due share of the compensation paid by the plaintiffs for the performance of the duty, it follows, logically, that there is a promise on their part, implied, at least, from their duty to the plaintiffs, and from their receipt of the consideration, that they will perform it; and this promise, being made for the benefit of the plaintiffs, it enures to them to them to the same effect as a promise made directly to them, and they can maintain an action for its breach. Under the provisions of the statutes that it is the duty of connecting lines to receive and transmit messages received from other lines, connected with the fact that the defendants did receive the plaintiffs’ message, it is to be implied in law, and the courts may assume it to be true, *422 that arrangements have been macle between the connecting lines, so that the compensation agreed upon and received at the office which receives the message, is the full compensation for all the lines over which it is sent; and that as between themselves the proportion of consideration received or to be received by each line is understood and regulated between themselves ; and this creates an undertaking or engagement on the part of each company with the sender of the message, that it shall be transmitted over their line, and delivered according to the contract made at the office at which the message was received ; and it is also implied in law that each separate line so connecting and acting in concert has constituted the other,—that is, the line which receives the message, —its agents for making contracts over the lines of both.
Assuming the truth of this sixth answer, what, then, is the contract between the parties which we are now considering ?
It was to send this message for a consideration then agreed upon between the parties, without a request to have the message repeated back, which repetition, if requested, would have called for a still larger compensation, and which larger compensation would have secured to the plaintiffs the guarantee of the defendants of the entire correctness.
The contract, then, was, that the defendants would not be liable for delay, error or remissness. These being the only particulars specified in their terms and conditions of the special contract, they cannot claim exemption or release from any which by their contract they were bound to perform, other than such as are expressly specified. They cannot, in law, receive the consideration and be bound in duty, and then neglect or refuse to perform the duty at all. The complaint charges, not any delay, error or remissness, but that the message was never transmitted at all by the defendants to Rouse-ville, nor delivered to the said Eric Darling, who, it is charged, was then, and for a long time afterwards, was at the place where the message was directed .by the *423 plaintiffs. This is denied by the sixth answer, which for this purpose stands alone. An entire neglect and refusal to perform this contract, by the defendants, does not bring them within the excepted terms. “ Delay” in sending and delivering a message, implies that it was or would be sent at some time, but not sent or delivered promptly. “Error” in sending or delivering a message implies sending or delivering a wrong message, or to the wrong place or person. “Remissness” also implies a sending or delivering, but in a tardy, negligent or careless manner. It is neither delay, error nor remissness that is charged, but the entire omission or refusal to send or deliver the message, and this is admitted. It is true that it is stated in the complaint that the message was correctly transmitted to the defendants, and was then put upon their lines. The meaning of putting it upon their lines is not explained by either pleading, and whether or not it was sent on the wires we are not informed ; but as this expression is immediately followed by the positive allegation that it was never transmitted, we cannot assume that it was, or that these two allegations, unexplained, are in conflict, but they must be construed to be in harmony. Then, in legal view, it comes to this: the defendants were employed and paid to transmit a message for the plaintiffs. This undertaking it was the defendants’ duty to perform. They agreed to perform it; they failed to perform, and are guilty of a breach. I know of no reason why they are exempt from the same legal liabilities as would be of any other party, whether professional or mechanical, who offer to perform duties, and who undertake to perform, who receive a compensation for performance, and fail in the undertaking.
Whether damages are nominal, or actual and plenary, we are not called upon to-decide. The answer sets up no defense.
I think, therefore, the judge at special term erred in overruling the demurrer to the sixth answer. This answer sets up and claims the duty was performed under *424 and by virtue of the special contract therein set forth, but does not show that the defendants performed according to that contract, but admits a failure.
The seventh answer sets up a different special agreement, under which the defendants. undertook the performance ; but they do not allege or claim that it was an agreement made between them and the plaintiffs, or that the plaintiffs had any knowledge or information of the terms, rules, regulations or conditions by which they were regulated in the transmission of messages, which they claim constituted the contract. If we are right in the position that the statute having imposed the duty upon connecting lines of transmitting messages for each other, and that the company receiving the message and the considóration, is the agent to make contracts with the other roads with which it is in connection, then the contract of the agent is the contract of the principal who undertakes the performance of the duty. The contract made by the agent, whether it arises from implication of law or by express special terms, is the contract which may be enforced if made within the legitimate business of the principal, or power of the agent. As between the agent and third parties, the apparent authority is the real authority. The private or other arrangement between the principal and their agent, not brought home to the party who contracts with the agent, does not affect the contract as to such party. What the contract was between the plaintiffs and the United States Telegraph Company, the defendants, is not set up in this seventh answer ; and the private agreement between the latter and the defendants, or the knowledge of the branch company in relation to the terms, regulations and conditions of the defendants in their transmission of messages, is a matter of no importance, and constitutes no defense to the charge against the defendants of breach of duty. In this view it is not necessary to discuss what would have been the rights of the parties had the plaintiffs sent the message from the defendants’ office, .written upon one of their blanks, containing their rules, condi *425 tions and regulations as to their terms of transmitting messages.
But even if these rules, regulations arid conditions were in legal effect to be brought to the plaintiffs’ notice, there would still be a liability on the part of the defendants, as their conditions admit, to the amount of the consideration received by them for their agreement to transmit, and the breach of duty in this respect; and the answer would then admit a limited liability on the part of the defendants. I think, therefore, the special term was in error in overruling the demurrer to this seventh answer.
The eighth answer of the defendants sets up a want of the exercise of ordinary prudence on the part of the plaintiffs in respect to procuring the dispatch to be repeated, or to make inquiries whether it had reached its destination, or to send a new dispatch to their agent to ascertain whether the first had been received, or by other means to obtain the information they desired ; and that by reason of these neglects and omissions they were guilty of negligence, &c.
By the well settled rules of pleading, each answer must of itself be a complete answer to the whole complaint ; as perfectly so as if it stood alone. Unless, in terms, it adopts or refers to the matter contained in some other answer, it must be tested as a pleading alone by the matter itself contains.
Examining this answer by the rule we have stated, as an answer to the charge of the omission to transmit a message for which they have been paid, and which it was their duty to send, they do not even allege directly that they transmitted the message, or make any reference to terms, conditions or rules which were made to control the contract. The court cannot, as matter of law, adjudge that ordinary prudence required that the plaintiffs should have had the dispatch repeated ; or that they should do any act, or take any other precaution tb an that of making the dispatch, delivering it to the de *426 fenclants. or their agents, to be transmitted, and pay the charges demanded for the service.
The law, then, casts the burden upon the defendants of showing, by an answer, a performance, or a good legal excuse for the non-performance of their obligation. This answer is entirely deficient in setting up any defense except negligence, and this only in a manner which the couit cannot adjudge as a question of law. The special term, therefore, correctly sustained the demurrer of the plaintiffs to this eighth answer.
I do not take the ground that the defendants are common carriers, nor that they may not limit their liability by special contracts, nor even that writing the dispatch upon the printed blank kept by the telegraph company, may not bind the sender by the terms of the rules, regulations and conditions printed thereon, whether they were read by the sender of the message or not. But taking the rules, regulations and conditions set forth in the sixth answer to be the terms of the said branch company, to wit: that they only guarantee entire correctness when messages are repeated, and such repetition paid for, by an extra charge,—the agreement in question is not brought within those terms. The extra charge was not paid, and no request was made to have the message repeated, and of course no guarantee of entire correctness was made by the defendants, or by their agent.
The message, however, was delivered, and its transmission paid for. What, then, was the contract % Had • the plaintiffs required its repetition, it would have come within the terms of the guaranty, and the contract would be clear ; but the company do transmit messages without the guaranty, and for a consideration paid for so doing. What, then, are the liabilities of the party undertaking % Can they receive the consideration money, and refuse to send it % Can they send it part of the way, and refuse to send it further ? Does the party who pays for the transmission take upon himself all the risks whether or not the company will perform their duty and send it % *427 Is this reasonable ? Is this law? I think not. There was an undertaking of some kind, in law, from the parties who received the message. If it did not come within the terms of the special agreement, then, it is left as if there was no special agreement; and the agreement is such as the law implies, and there is an admitted breach. True, the printed notice upon which the message was written informed the sender that, for a certain additional charge, he could obtain a guaranty, but the plaintiffs chose to have it transmitted without the guaranty, and, of course, his remedy is precisely such as it would have been had there been no printed notice. I do not notice, further, the special terms of the contract set up in the seventh answer, for the reason that I have held that there is no allegation that any contract was made by the defendants with the plaintiffs, and that enough was not shown to bring the plaintiffs within its terms.
I am of opinion, therefore, that neither of the answers numbered sixth, seventh or eighth do set forth facts sufficient to constitute defenses to the matters set up in the complaint.
There should be a reversal of the order at the special term as to the sixth and seventh answers, with costs of the appeal and costs below ; and the order of the special term as to the eighth answer should be affirmed with costs of tire appeal, with liberty to the defendants, on payment of costs, to answer over as to the said sixth, seventh and eighth answers..
Ordered accordingly.

 Present, James, Rosekrans and Potter, JJ.